1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                  NORTHERN DIVISION at COVINGTON
                              - - -
3

UNITED STATES OF AMERICA,      :
4                                     :
                     Plaintiff,  :Docket No. 17-CR-7
5                                     :
                                      :
6    versus                    :
                                      :
7    RYAN J. BROCK,             :
                               :Covington, Kentucky
8                    Defendant.  :Tuesday, December 12, 2017
                               :10:30 a.m.
9    _____:_____
                                      :
10   UNITED STATES OF AMERICA      :
                               :Docket No. 17-CR-12
11                   Plaintiff,   :
                                      :
12   versus                    :
                                      :
13   NATHAN W. BALSER,          :
                                      :
14                   Defendant   :

15                              - - -

16                  TRANSCRIPT OF REARRAIGNMENT
                    BEFORE DAVID L. BUNNING
17            UNITED STATES DISTRICT COURT JUDGE
                              - - -
18

19   APPEARANCES:

     For the United States:
20   Case No. 17-CR-7            ELAINE K. LEONHARD, ESQ.
                                 U.S. Attorney's Office
21                               207 Grandview Drive
                                 Suite 400
22                               Ft. Mitchell, KY 41017

23   Case No. 17-CR-12           ROBERT K. McBRIDE, ESQ.
                                 U.S. Attorney's Office
24                               207 Grandview Drive
                                 Suite 400
25                               Ft. Mitchell, KY 41017

2

```
 1    APPEARANCES:   (continued)

 2    For the Defendant,          F. DENNIS ALERDING, ESQ.
      Ryan J. Brock:              Alerding Law Office
 3                                303 Greenup Street, Suite 300
                                  Covington, KY 41011
 4

 5    For the Defendant,          STEVEN N. HOWE, ESQ.
      Nathan Balser:              94 S. Main Street
 6                                Dry Ridge, KY 41035

 7
      Court Reporter:             LISA REED WIESMAN, RDR-CRR
 8                                Official Court Reporter
                                  35 W. Fifth Street
 9                                Covington, KY 41011
                                  (859) 291-4410
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
             Proceedings recorded by mechanical stenography,
25    transcript produced by computer.
```

1          (Proceedings commenced at 10:35 a.m.)

2              THE COURT:  All right.  Madam Clerk, if you would

3     call the two matters set at 10:30, please.

4              COURTROOM DEPUTY:  Covington Criminal 17-7 and 17-12,

5     United States v. Nathan Balser and Ryan Brock.

6              THE COURT:  Why don't we start with entries of

7     appearance, please.

8              MS. LEONHARD:  Good morning.  Elaine Leonhard on

9     behalf of the United States.  As is --

10             MR. McBRIDE:  Good morning, Your Honor.  Bob McBride

11    on behalf of the United States in Nathan Balser, 17-12-DLB.

12             THE COURT:  Ms. Leonhard, you're here for the Brock

13    case?

14             MS. LEONHARD:  I am.  Thank you.

15             THE COURT:  Counsel?

16             MR. HOWE:  Judge, Steven Howe on behalf of Nathan

17    Balser, to my left.

18             MR. ALERDING:  Good morning, Your Honor.  Dennis

19    Alerding.  I represent Mr. Brock.  He's seated here.

20             THE COURT:  Both of you were brought to court this

21    morning because your attorneys have filed motions indicating

22    that you were going to be changing your pleas.

23          Mr. Balser, we have a trial set next week, next Tuesday

24    in your case.  I've spoken with the court clerk.  We're going

25    to summons probably 70 jurors.  Cases like this, I generally

4

1    bring in more jurors because it's harder to get jurors that

2    don't have, perhaps, strong feelings about the subject matter

3    in the case.  In fact, I just tried a case similar to this one

4    a week ago, I guess it was.  Not necessarily exactly the same,

5    but involved issues of child pornography.

6        Do you understand that if you plead guilty, there's not

7    going to be a trial next week?

8              DEFENDANT BALSER:  Right.

9              THE COURT:  Mr. Brock, your case is different in that

10   we didn't have a trial set in your case.  The case was set

11   today to set a trial date.  So if you didn't enter a guilty

12   plea, we would set a prompt trial date in your case as well.

13       Do you understand that?

14             DEFENDANT BROCK:  Yes, sir.

15             THE COURT:  Okay.  Now, I had spoken with Mr. McBride

16   earlier, kind of off the record, after I finished the prior

17   proceeding, about doing these cases both at the same time.

18             MR. HOWE:  Judge, if we may approach as counsel on

19   that.  I've raised the issue with Mr. Balser, who has an

20   objection to part of doing it together.  If we could approach

21   and put that on the record.  Safety reasons, things of that

22   nature.

23             THE COURT:  That's fine.

24        (Sidebar conference.)

25             THE COURT:  Go ahead.

1          MR. HOWE:  Judge, I explained to my client, he was

2     wanting to know why the other individual was in the room, and

3     I explained to him that you'd indicated you were going to take

4     the plea together.

5          When it got down to the actual allegations against him,

6     the facts and things that he would be stating, he objected to

7     me of having another individual in the room that wasn't

8     charged in a similar manner.  I don't know what he's charged

9     with.

10          THE COURT:  He's actually charged with production of

11     child pornography.

12          MR. HOWE:  Okay.  Well, he was saying he thinks there

13     could be a safety issue if it goes back that way, if they

14     talk.  I told him I would raise the issue with you to do the

15     colloquy -- as far as the constitutional rights, things like

16     that, we can do them together, but maybe come to the bench

17     when it gets down to the actual facts.

18          I don't know anything about the gentleman's facts here,

19     but my case is somewhat aggravating, the facts are.  Not

20     somewhat.  They are.

21          THE COURT:  The other case is -- I think it's fair to

22     say it's aggravating, wouldn't you say, Mr. Alerding?

23     Potentially aggravating?

24          MR. ALERDING:  I concur.

25          MR. HOWE:  So anyway, just when it gets to more of

6

1      the sensitive nature of that, he would rather have --

2           THE COURT:  We can bring the defendants to the bench.

3      That's what we actually do in Del Rio, we bring the defendants

4      up to the bench and talk at sidebar.  I guess I didn't explain

5      that.

6           MR. McBRIDE:  That's fine, Judge.

7        (Sidebar concluded.)

8           THE COURT:  I'm going to have to go through a series

9      of questions with each of you.  When we get to the nature of

10     what you all did which makes you believe you're guilty of the

11     count to which you're entering a plea, we'll bring you up here

12     to the bench, and we'll do that separately.

13          But for the lion's share of what I'm going to be asking

14     both of you, it's the same questions for each of you, so it

15     makes sense for me to do this together.

16          So what I'm going to do, I'll start with placing both of

17     you under oath.  If you'd stand up, raise your right hand.

18          (Both defendants were sworn by the deputy clerk.)

19          THE COURT:  Now, what I'm going to do, I'm going to

20     address each of you by your last name.  I may be pointing at

21     you to answer the questions.

22          If, at any time during this process this morning, either

23     of you wish to talk to your attorney before answering a

24     question, I want you to feel free to do that.

25          All right, Mr. Balser?

7

1              DEFENDANT BALSER:  Yes.

2              THE COURT:  Mr. Brock?

3              DEFENDANT BROCK:  Yes, sir.

4              THE COURT:  If I ask a question that you don't

5    understand, let me know, and I'll rephrase.

6        All right, sir?

7              DEFENDANT BALSER:  Okay.

8              THE COURT:  Mr. Brock?

9              DEFENDANT BROCK:  Yes, sir.

10             THE COURT:  I want to start with you, Mr. Alerding.

11   I know your client -- and was Mr. Balser evaluated for

12   competency?  I can't recall.

13             MR. HOWE:  He was not.

14             THE COURT:  I know your client was.  I recently

15   adopted Judge Smith's report and recommendation regarding

16   that.

17       Since he's been back from his evaluation, Mr. Alerding,

18   have you had any issues communicating with him?

19             MR. ALERDING:  Not at all.  We learned in the

20   evaluation what we needed to learn, and we did not appeal or

21   object to the report and recommendation.

22             THE COURT:  Okay.

23             MR. ALERDING:  I've talked with him, and he's very

24   coherent.

25             THE COURT:  All right.  So you believe him to be

8

1    competent, then?

2            MR. ALERDING:  I do.

3            THE COURT:  Very well.  What says the United States?

4            MS. LEONHARD:  We have no reason to dispute that.

5            THE COURT:  No issues regarding your client's

6    competency?

7            MR. HOWE:  None at all.

8            THE COURT:  Mr. McBride?

9            MR. McBRIDE:  None, Your Honor.

10           THE COURT:  Okay.  Now, both of you need to

11   understand, though, that if you answer any of my questions

12   this morning untruthfully, those answers could be used against

13   you in a separate prosecution for perjury.

14       Do you understand that, sir?

15           DEFENDANT BALSER:  Yes, sir.

16           THE COURT:  Mr. Brock?

17           DEFENDANT BROCK:  Yes, sir.

18           THE COURT:  Now, what are your full names?

19       Sir?

20           DEFENDANT BALSER:  Nathan William Balser.

21           THE COURT:  All right.

22           DEFENDANT BROCK:  Ryan James Brock.

23           THE COURT:  How old are each of you?

24           DEFENDANT BALSER:  I'm 31.

25           DEFENDANT BROCK:  34, sir.

1          THE COURT:  How much formal education do you each

2     have?

3          DEFENDANT BALSER:  High school diploma and some

4     college education.

5          DEFENDANT BROCK:  GED and some college, sir.

6          THE COURT:  The rules of criminal procedure require

7     that each defendant charged here in federal court be provided

8     with what's called discovery.  Any statements you gave, the

9     facts of the case, evidence the United States would use,

10    images that were seized and found, that type of thing.

11       Rule 16 requires that the United States provide that to

12    each defendant and that they have an opportunity to review

13    that with their lawyer.

14       First, have each of you been provided that discovery?

15         DEFENDANT BALSER:  I denied my discovery.

16         THE COURT:  You what?

17         MR. HOWE:  We went through discovery with him.

18    However, he didn't want a copy to be left with him.

19    Obviously, the images are not something we could have shared

20    together anyway.

21         THE COURT:  I understand that.  Sometimes, I guess, a

22    summary, perhaps, is better than --

23         MR. HOWE:  Right.

24         THE COURT:  Do you feel like Rule 16 has been

25    complied with here?

1          MR. HOWE:  It has, Judge.  He also has a concurrent

2     state case in which the discovery ran hand in hand with that

3     case.

4          THE COURT:  That's a sodomy case; is that right?

5          MR. HOWE:  It is.  It's been also -- it was identical

6     discovery, basically, with the exception of the images,

7     correct?

8          DEFENDANT BALSER:  Yeah.

9          MR. HOWE:  And you've had an opportunity to review

10    all that?

11         DEFENDANT BALSER:  Yes, I have reviewed that.

12         THE COURT:  What about you, Mr. Brock?

13     The discovery, have you had a chance to review that with

14    him, Mr. Alerding?

15         MR. ALERDING:  I did.  Of course, the defendant

16    hasn't seen the images.  I went to see them.  I told him what

17    they show, and he also had a state case pending in which the

18    discovery merged.  He's seen all the discovery.

19         THE COURT:  Is that correct, sir, Mr. Brock?

20         DEFENDANT BROCK:  Yes, sir.

21         THE COURT:  You both are appointed counsel, correct?

22         MR. HOWE:  Correct.

23         MR. ALERDING:  Yes.

24         THE COURT:  The Court has appointed counsel for each

25    of you.  They have taken actions on your behalf in this case,

1    negotiated a plea agreement, apparently, with the United

2    States.  Are you satisfied with your lawyer?

3              DEFENDANT BALSER:  Yes, sir.

4              THE COURT:  Sir?

5              DEFENDANT BROCK:  Yes, sir.

6              THE COURT:  Okay.  Has your lawyer done everything

7    you've asked him to do?

8              DEFENDANT BALSER:  Yes, sir.

9              DEFENDANT BROCK:  Yes, sir.

10             THE COURT:  Okay.  Are either of you currently taking

11   any medications?

12             DEFENDANT BALSER:  Yes, sir.

13             DEFENDANT BROCK:  Yes, sir.

14             THE COURT:  Okay.  Do any of the medications you take

15   impact your ability to understand what's happening this

16   morning?

17             DEFENDANT BALSER:  Not that I know of.

18             DEFENDANT BROCK:  No, sir, not that I know of.

19             THE COURT:  Now, the indictment in each of your

20   cases -- I'll start with you, Mr. Balser.  The indictment was

21   returned on April 13th.  It's a two-count indictment and then

22   a forfeiture allegation.

23        Did you receive a copy of the indictment, sir?

24             DEFENDANT BALSER:  Yes, sir.

25             THE COURT:  Did you review the indictment with your

12

1    lawyer?

2              DEFENDANT BALSER:  Yes, sir.

3              THE COURT:  Okay.  Now, Mr. Brock's indictment was

4    returned, I believe, a month earlier.  That's correct, March 9

5    of this year, also containing two counts with a forfeiture

6    count.

7        Mr. Brock, did you receive a copy of the indictment at

8    the time you were arraigned by the magistrate?

9              DEFENDANT BROCK:  Yes, sir.

10             THE COURT:  Have you gone through the indictment with

11   your lawyer?

12             DEFENDANT BROCK:  Yes, sir.

13             THE COURT:  You have?

14             DEFENDANT BROCK:  Yes, sir.

15             THE COURT:  There's two counts.  Count 1 is a

16   production of child pornography count.  Count 2 is a

17   possession -- is that correct?  Yes, possession count.  Is

18   that accurate?

19             MS. LEONHARD:  It is.

20             THE COURT:  Do you understand those two charges?

21             DEFENDANT BROCK:  Yes, sir.

22             THE COURT:  Mr. Balser, your indictment is the same,

23   Count 1 being a production count, Count 2 being a possession

24   count.

25             DEFENDANT BALSER:  Yes.

13

1          THE COURT:  All right.  Now, the charges in both

2     Counts 1 -- it looks like, according to your written plea

3     agreements, you each are going to be pleading guilty to

4     Count 1 of your respective indictments.  Both of those are

5     felonies.

6          Do you understand that?

7          DEFENDANT BROCK:  Yes, sir.

8          DEFENDANT BALSER:  Yeah.

9          THE COURT:  Now, a felony conviction will deprive you

10    of certain civil rights which would be the right to vote,

11    serve on a jury, hold public office, or possess a firearm for

12    any purpose at all.

13         Do you each understand that?

14         DEFENDANT BROCK:  Yes, sir.

15         DEFENDANT BALSER:  Yes, sir.

16         THE COURT:  Now, the written plea agreement -- I have

17    before me two written plea agreements.  There is a one-page

18    supplement for Mr. Balser.

19         Mr. Howe, it's the Court's practice now to just return

20    these to the lawyers.

21         Mr. Staggs, if you would take this and give it to

22    prosecutor, Mr. McBride.

23         Okay.  Now, before I go through the plea agreement, I

24    want to just mention to you what jury trial rights you have.

25    We talked earlier about Mr. Balser having a trial set for next

1    week.

2         Mr. Brock, you would have a trial set very promptly, if

3    you decided to go to trial.

4         A jury trial would consist of the following:  Each of you

5    would be presumed innocent.  The United States would have to

6    produce evidence which establishes your guilt beyond a

7    reasonable doubt before a jury could find you guilty on either

8    Count 1 or 2.

9         Do you each understand that?

10             DEFENDANT BALSER:  Yes, sir.

11             DEFENDANT BROCK:  Yes, sir.

12             THE COURT:  Now, at trial, you would have the right

13   to assistance of counsel.  Your attorneys would be present

14   with you throughout the trial.

15        Do you understand that?

16             DEFENDANT BALSER:  Yes, sir.

17             DEFENDANT BROCK:  Yes, sir.

18             THE COURT:  Each of your lawyers could cross-examine

19   all the witnesses called by the United States.

20        Do you each understand that?

21             DEFENDANT BALSER:  Yes, sir.

22             DEFENDANT BROCK:  Yes, sir.

23             THE COURT:  As defendants who have appointed counsel,

24   under the rules, your attorneys would be able to ask the Court

25   to have subpoenas issued to individuals to testify at trial in

15

1    your behalf.

2         Do you each understand that?

3              DEFENDANT BALSER:  Yes, sir.

4              DEFENDANT BROCK:  Yes, sir.

5              THE COURT:  While you each enjoy a constitutional

6    right to testify, you also enjoy a Fifth Amendment right not

7    to incriminate yourself.  You don't have to testify.

8         If you chose, after speaking with your lawyer, that you

9    believe it would be in your best interest at trial not to

10   testify or call witnesses, for that matter, I will tell the

11   jurors it would be completely improper for them to consider

12   that fact in determining your guilt.

13        Do you understand that?

14             DEFENDANT BALSER:  Yes, sir.

15             DEFENDANT BROCK:  Yes, sir.

16             THE COURT:  Now, by pleading guilty, you're waiving

17   your right not to incriminate yourself as well as those other

18   trial rights I've just explained to you.

19        Do you understand that?

20             DEFENDANT BALSER:  Yes, sir.

21             DEFENDANT BROCK:  Yes, sir.

22             THE COURT:  Because here at the end of the

23   proceeding, we'll do it up here at the bench, I'm going to

24   have to ask you to confirm what you did which makes you

25   believe you're guilty of this offense, thereby waiving your

1    Fifth Amendment right not to incriminate yourself.

2        Do you understand?

3              DEFENDANT BALSER:  Yes, sir.

4              DEFENDANT BROCK:  Yes, sir.

5              THE COURT:  Finally, if I accept your plea, you'll be

6    adjudicated guilty of Count 1 this morning.  I'll vacate your

7    trial date, Mr. Balser, and you'll be sentenced in

8    approximately 90 to 120 days, after a presentence report is

9    prepared.

10       Do you understand?

11             DEFENDANT BALSER:  Yes, sir.

12             THE COURT:  Mr. Brock?

13             DEFENDANT BROCK:  Yes, sir.

14             THE COURT:  All right.  Now, back to the plea

15   agreements.  There is a plea agreement for each of you.

16   Before I get into the facts of the plea agreement, let me ask

17   the assistant U.S. attorneys, were there prior plea agreements

18   offered to either of those defendants?

19       Mr. McBride?

20             MR. McBRIDE:  With regard to Mr. Balser, we went

21   through three prior versions of the plea agreement, Mr. Howe

22   and I, in our negotiations.  This is the most favorable plea

23   agreement offered to Mr. Balser by the United States.

24             THE COURT:  Mr. Howe, is that correct, sir?

25             MR. HOWE:  I would concur with that, sir.

1          MS. LEONHARD:  Your Honor, only one plea agreement

2     was tendered to Mr. Brock.  That was the one we executed

3     today.

4          THE COURT:  Mr. Alerding?

5          MR. ALERDING:  Because of the sentencing restrictions

6     under the statute, only one plea agreement was offered to

7     Mr. Brock because of the minimum mandatory and the statutory

8     maximum.

9          THE COURT:  Okay.  I think it's 15 to 30; is it not?

10         MS. LEONHARD:  It is.

11         THE COURT:  That's the same for both defendants; is

12    it not?

13         MR. McBRIDE:  It is, Your Honor.

14         THE COURT:  I do want to advise you, we'll eventually

15    get to the substance of the plea agreements, but each of you

16    are facing, on Count 1, a minimum term of incarceration of 15

17    years and a maximum term of 30 years.

18       Do you understand that?

19         DEFENDANT BALSER:  Yes, sir.

20         DEFENDANT BROCK:  Yes, sir.

21         THE COURT:  Let me explain to you, as well, that

22    there is going to be a term of supervised release which

23    follows any imprisonment the Court imposes.  That's federal

24    supervised release.

25       Do you understand that?

18

1          DEFENDANT BALSER:  Yes, sir.

2          DEFENDANT BROCK:  Yes, sir.

3          THE COURT:  And during that period of time, once you

4    finish serving your sentence, you'll be on federal paper,

5    federal supervised release.  That's what that means.

6       Mr. Brock, do you understand?

7          DEFENDANT BROCK:  Oh, yes, sir.  Sorry about that.

8          THE COURT:  And I'll go through a number of

9    conditions with you at the time you're sentenced.  Because of

10   the nature of the offense of conviction, there's some fairly

11   stringent conditions.  Those will all be set forth in the

12   presentence report.  There may be additional ones as well.  If

13   you violate any of the conditions of supervision, you need to

14   understand that your supervised release could be revoked.

15      Do you understand that?

16         DEFENDANT BALSER:  Yes, sir.

17         DEFENDANT BROCK:  Yes, sir.

18         THE COURT:  In the event of revocation of supervised

19   release, the Court could impose an additional term of

20   imprisonment for the revocation, followed by another terms of

21   supervised release.  Understand?

22         DEFENDANT BALSER:  Yes, sir.

23         DEFENDANT BROCK:  Yes, sir.

24         THE COURT:  Like, for instance, FYI, you're on

25   supervised release.  You go out and get a DUI, you write a

19

1     cold check, you violate some other local or state law and get

2     convicted of that.  Or even if you don't get convicted, the

3     probation officer can notify the Court.  We'd have a hearing.

4     Even though it's not a case involving the same type of

5     offense, you could still be revoked for that.

6         Do you all understand that?

7             DEFENDANT BALSER:  Yes.

8             DEFENDANT BROCK:  Oh, yes, sir.  Thank you.

9             THE COURT:  Now, the maximum term, I take it, is a

10    life term of supervised release; is that right?

11            PROBATION OFFICER STUDER:  That's correct, Judge.

12            THE COURT:  So it will be not less than five, no more

13    than the range of your life.

14        Understand?

15            DEFENDANT BALSER:  Yes, sir.

16            DEFENDANT BROCK:  Yes, sir.

17            THE COURT:  Okay.  There's also a fine maximum of

18    $250,000 and a $100 special assessment.

19        Do you understand that?

20            DEFENDANT BALSER:  Yes, sir.

21            THE COURT:  The special assessment is like court

22    costs.

23            DEFENDANT BROCK:  Yes, sir.

24            THE COURT:  All right.  Now we can get to the plea

25    agreement.

20

1          Let me start with Mr. Balser's.  Your plea agreement

2     consists of seven pages.  There are signatures on the final

3     page.  I recognize Mr. McBride as well as Mr. Howe's

4     signatures from other cases they have in our court.

5          There's a signature in blue ink, Nathan W. Balser, signed

6     today.  Is this your signature?

7               DEFENDANT BALSER:  Yes, sir.

8               THE COURT:  Did you read the plea agreement before

9     signing it?

10              DEFENDANT BALSER:  Yes, sir.

11              THE COURT:  Okay.  Just noticed there appears to be a

12     typo.  The last paragraph on page 7 goes paragraph 14,

13     paragraph 15, paragraph 1.

14              MR. McBRIDE:  Should be 16, Your Honor.

15              THE COURT:  I'm going to add that.

16          Now, you signed this today, Mr. Balser; is that right?

17              DEFENDANT BALSER:  Yes, sir.

18              THE COURT:  Did you review it with Mr. Howe prior to

19     today, though?

20              DEFENDANT BALSER:  Yes, sir.

21              THE COURT:  Mr. Howe?

22              MR. HOWE:  That is accurate, Judge.  As was

23     indicated, there were a number of plea agreements that were

24     circulated.  The last was more of defining some appellate

25     rights.

21

1        So we'd gone through those, the substantive part of that,

2    on a number of occasions, met with him on a number of

3    occasions, talked to him on the phone a number of occasions.

4        The one that he actually signed, he signed this morning.

5    It had a slight variation of the factual basis and then

6    clarified more what his appellate rights, if any, are.

7            THE COURT:  We'll get through the facts here at the

8    bench and then your appellate rights here in a bit.

9        Let me ask this.  The plea agreement itself, Mr. Balser,

10   you, of course, read it, correct?

11           DEFENDANT BALSER:  Yes, sir.

12           THE COURT:  Did you have any questions about any of

13   the provisions of the agreement that Mr. Howe could not

14   explain for you?

15           DEFENDANT BALSER:  No.  He was very thorough.

16           THE COURT:  Did anyone force you into entering this

17   guilty plea?

18           DEFENDANT BALSER:  No, sir.

19           THE COURT:  Did anyone threaten you in any way in an

20   effort to induce you to plead guilty?

21           DEFENDANT BALSER:  No, sir.

22           THE COURT:  Has anyone made any exact predictions as

23   to what your sentence would be?

24           DEFENDANT BALSER:  No, sir.

25           THE COURT:  Now, we'll discuss the substance here in

22

1    a moment.  Let me turn to Mr. Brock's plea agreement.  Your

2    plea agreement also consists of seven pages.  In fact, the

3    signatures are on the last two pages.  I recognize both

4    Mr. Alerding's signature and Ms. Leonhard's signature from

5    other cases they have in our court.

6        Is this your signature at the bottom of page 6, dated

7    today, in black ink, Ryan Brock, sir?

8              DEFENDANT BROCK:  Yes, sir.

9              MR. ALERDING:  Judge, that's how he signs his

10   signature.  I watched him sign it.

11             THE COURT:  Did you review your plea agreement with

12   your lawyer before signing it?

13             DEFENDANT BROCK:  Yes, sir.

14             THE COURT:  Did you have any questions about any of

15   the provisions of the plea agreement that Mr. Alerding could

16   not answer to your satisfaction?

17             DEFENDANT BROCK:  No, sir.

18             THE COURT:  Did anyone force you into entering this

19   guilty plea?

20             DEFENDANT BROCK:  No, sir.

21             THE COURT:  Has anyone threatened you in any way in

22   an effort to induce you to plead guilty?

23             DEFENDANT BROCK:  No, sir.

24             THE COURT:  Has anyone made any exact predictions as

25   to what your sentence is going to be?

1       DEFENDANT BROCK:  No, sir.

2       THE COURT:  Okay.  Now, part of the plea agreement

3   reflects that each of you are pleading guilty to Count 1, and

4   the United States will move to dismiss Count 2 at sentencing;

5   is that correct?

6       MR. HOWE:  Yes, sir.

7       MR. ALERDING:  Yes.

8       DEFENDANT BROCK:  Yes, sir.

9       DEFENDANT BALSER:  Yes, sir.

10      THE COURT:  We'll do plea agreements separately.

11  Mr. McBride, I'm going to ask you to summarize the written

12  plea agreement as it relates to Mr. Balser.

13      Mr. Balser, I want you to pay close attention because if

14  there's anything he says which is different than your

15  understanding, you need to let me know.  Then we'll do yours

16  as well, Mr. Brock.

17      Mr. McBride?

18      MR. McBRIDE:  Thank you, Your Honor.  As the Court

19  said, Mr. Balser is pleading to Count 1 of the indictment.  At

20  the time of sentencing, the United States will move to dismiss

21  Count 2.

22      The parties have set out guideline calculations.

23  However, the parties agree the sentence should be no less than

24  240 months.

25      THE COURT:  That (c)(1)(C) provision is just a floor.

24

1    That's not agreed sentence?

2           MR. McBRIDE:  That's correct, it is a floor.

3           MR. HOWE:  That's accurate, Judge.  The 240 is a

4    floor, and the fact that it's going to run concurrent is the

5    (c)(1) part.

6           THE COURT:  Okay.  So you're asking me to accept the

7    plea agreement which -- well, let me ask you this.  I can

8    recommend a concurrent sentence, perhaps, but it's not going

9    to be binding on a state court judge.

10          MR. McBRIDE:  Judge, I think that you can, when

11   there's a prospective sentence, determine that the federal

12   sentence will run concurrent to whatever the state imposes.

13          MR. HOWE:  I believe so too, Judge.  There's a

14   Supreme Court case on point on this.  Even though it's not

15   resolved as a prospective case, you can say your case is going

16   to run concurrent with that one.

17          MR. McBRIDE:  Because it's a pending matter.

18          THE COURT:  Okay.  Have you discussed that with the

19   state prosecutors?

20          MR. McBRIDE:  I have, Your Honor.

21          MR. HOWE:  Yes.

22          THE COURT:  Have you discussed it with the victim's

23   family?

24          MR. McBRIDE:  It's been discussed with the victim's

25   family.  Personally, I did not, but the commonwealth attorney

1   did.

2            THE COURT:  And I take it, by proposing this plea

3   agreement, they are in agreement with that?

4            MR. McBRIDE:  They are, Your Honor.

5            THE COURT:  Mr. Howe?

6            MR. HOWE:  That's my understanding too, Judge.  I've

7   spoken with his defense counsel in Campbell County, and she

8   indicated that that's what they're inclined to do.

9            THE COURT:  Who is the defense counsel?

10           MR. HOWE:  Sheena Bowser.

11           DEFENDANT BALSER:  Sheena Baylor.

12           MR. HOWE:  Baylor, I'm sorry.

13           THE COURT:  Is that before judge --

14           MR. HOWE:  Judge Ward.

15           THE COURT:  All right.  So the 11(c)(1)(C) is the

16   concurrent nature of the sentence?

17           MR. McBRIDE:  And the floor, Your Honor.

18           THE COURT:  And the floor.

19           MR. HOWE:  He can never get a sentence below the 240.

20           THE COURT:  Frankly, depending on how the Court

21   adjudicates -- and I spoke briefly with the probation officer

22   about it -- the sadistic and masochistic objection, 240 may

23   fall within the range.

24           MR. HOWE:  It might.  In fact, we talked about that

25   on a number of occasions.  Actually, 240 falls right within

1    the range if it's not applicable.  It would be below the range

2    if it is applicable.

3         THE COURT:  And, frankly, the applicability of that,

4    it's been a couple of years since I've actually had to dive

5    into the cases interpreting that particular section.  I know

6    it's an "or."  And your client, Mr. Brock, has an infant or

7    toddler or sadistic or masochistic.  I mean, that section,

8    it's (a)(4), I think.

9         MR. McBRIDE:  That's correct, Judge.

10        THE COURT:  I'll need to make that decision as a

11   matter of law.

12        MR. HOWE:  Correct, Your Honor.  We understand that.

13   It's fact driven, but it's a legal decision.

14        MR. McBRIDE:  And that's accounted for in our

15   recommendations of the guidelines later on, Your Honor.

16        THE COURT:  Go ahead, sir.

17        MR. McBRIDE:  Just for the record, Judge, Mr. Balser

18   is going to enter a plea in Commonwealth of Kentucky versus

19   Nathan Balser, Campbell Circuit Court, Division 1, 17-CR-237

20   and this Court will impose a term that will run concurrent to

21   whatever is imposed in the commonwealth, although the

22   commonwealth is not limited in terms of this agreement as to

23   the length of what is imposed.

24        THE COURT:  So they can impose a longer sentence than

25   240.  Just the federal sentence will run concurrent --

1          MR. McBRIDE:  Correct, Your Honor, or they can impose

2    less.

3          THE COURT:  Okay.

4          MR. McBRIDE:  Paragraph 2 sets forth the essential

5    elements of Count 1.

6          Paragraph 3 sets forth the facts that the parties believe

7    support those elements and the parties have stipulated to.

8          Paragraph 4 sets forth the statutory punishment, which is

9    for imprisonment of not less than 15 years but no more than

10   30, a fine of $250,000, a term of supervised release of not

11   less than five years and up to life and, of course, there's

12   the mandatory special assessment of $100.

13         At paragraph 5, Judge, the parties set forth guideline

14   calculations.  These are recommendations to the Court.  They

15   do not bind the Court.

16         Under guideline section 2G2.1A, the base offense level is

17   32.

18         Under 2G2.1(b)(1), there's an increase of four levels

19   because the victim was less than 12 years old.

20         Under 2G2.1(b)(2)(A), there's an increase for two levels

21   because the commission of the offense involved a sex act.

22         The parties have a dispute, as the Court has already

23   noted, under 2G2.2(b)(4)(A), which increases the offense level

24   by four for images portraying sadistic or masochistic conduct.

25   The defendant reserves the right to argue that does not apply.

28

1    The United States reserves the right to argue it does apply.

2        Under 2G2.1B5, there's an increase in the offense level

3    by two levels because the defendant is the father of the

4    victim.

5        And under 3E1.1, the defendant is entitled to the two

6    levels for acceptance of responsibility.  At the time of

7    sentencing, the United States intends to move for the third

8    level.

9        The defendant also reserves the right to argue for a

10   downward variance from the guidelines but, again, agrees the

11   sentence of imprisonment will be no less than 240 months.  The

12   United States reserves the right to argue against a variance.

13       At paragraph 6, Judge, there is no agreement as to

14   whether restitution exists.  Although at this time we're not

15   aware of any restitution that would exist, we have to explore

16   that issue, Judge.

17       Paragraph 7, Mr. Balser is waiving his right to appeal

18   the guilty plea and the conviction.  He's entering a

19   conditional waiver of his right to appeal the sentence.

20       He may only appeal the sentence if, in fact, the Court

21   determines that 2G2.1(b)(4)(A) applies.  Otherwise, Mr. Balser

22   may not appeal his sentence of imprisonment.

23       He has also waived his collateral attack rights against

24   the guilty plea, conviction, and sentence; of course, with the

25   exception of ineffective assistance of counsel claims.

1        At paragraph 8, Judge, Mr. Balser acknowledges that he'll

2   be required to register as a sex offender pursuant to state

3   and federal law.

4        Judge, that's the summary of the core conditions of this

5   plea agreement.

6             THE COURT:  Okay.  First of all, did you hear the

7   summary provided by the prosecutor?

8             DEFENDANT BALSER:  Yes, sir.

9             THE COURT:  Is that your understanding of the written

10  plea agreement you have with the United States?

11            DEFENDANT BALSER:  Yes, sir.

12            THE COURT:  Mr. Howe?

13            MR. HOWE:  It is, Judge.

14            THE COURT:  Paragraph 9, I'm looking at this, and

15  it's one I haven't seen often.  That was one that was

16  specifically placed in -- you didn't summarize it.

17            MR. McBRIDE:  I apologize, Your Honor.

18            THE COURT:  That seems to be one that is relatively

19  unique.  Can you kind of explain that?

20            MR. McBRIDE:  Yes, Your Honor.  So what happens is

21  when somebody completes their sentence of imprisonment, they

22  are evaluated by the Bureau of Prisons, and they could be

23  subject to civil commitment proceedings.

24        As I understand it generally, it's if they are continued,

25  determined to be a predator of children.  They undergo

1    treatment in a federal facility.  They generally remain in

2    prison during that period of treatment.

3        But there is a whole unit of -- they do this at Butner,

4    North Carolina.  There's a whole unit of AUSAs who handle

5    those cases there.  I put it in here because I think the

6    defendant should have notice of that component and, frankly, I

7    try to put it in any of the plea agreements that I deal with

8    where there's production, Judge.

9        MR. HOWE:  That's accurate, Your Honor.  I've

10   explained to it my client.  I've explained to him that it is

11   something that would follow a sentence.

12       THE COURT:  Potentially follow.

13       MR. HOWE:  And I indicated it's a notice provision.

14   Like Mr. McBride, it's unfair not to indicate that that's

15   something to come down the road.  I haven't had it happen yet,

16   but that doesn't mean this would be the first case.  I wanted

17   to explain that to Mr. Balser.  As I said -- he indicated I

18   was thorough.  That's one of the things I really wanted to

19   make sure he would understand, that it could be a collateral

20   consequence of the plea that's outside of what the sentencing

21   Court would actually do.  That's not your decision, basically.

22       THE COURT:  Right.  That won't be something I handle.

23   That's something -- I suppose if you were confined in this

24   Court, I could potentially handle -- in this jurisdiction, I

25   mean, I could handle it.  That's not part of sentencing that

31

1    I'll do.

2         Do you understand?

3              DEFENDANT BALSER:  Yes.

4              THE COURT:  You understand that notice provision?

5              DEFENDANT BALSER:  Yes.

6              THE COURT:  All right.  Fair enough.

7         Okay.  So it looks as if, before I get to Mr. Brock's

8    case, I guess if the Court were to conclude that that

9    enhancement pursuant to 2G2.1(b)(4)(A) does apply, the

10   guideline range would be 324 to 405 if you're a Category I

11   criminal history.

12        Do you understand that?

13             DEFENDANT BALSER:  Yes, sir.

14             MR. McBRIDE:  Judge, just for clarification, it would

15   be capped at 30 years.

16             MR. HOWE:  Yes, capped at 360.

17             THE COURT:  324 to 360, thank you.

18        Now, if the Court were to find that that did not apply,

19   doing my math, that would be a total offense level of 37 and

20   the guidelines would be 210 to 262.  However, based upon the

21   plea agreement, it would be 240 to 262.

22             DEFENDANT BALSER:  Yes, sir.

23             MR. HOWE:  That's accurate, Judge.

24             THE COURT:  Is that your understanding?

25             MR. McBRIDE:  Yes, Judge.

32

1          THE COURT:  All right.  Now, that Category I criminal

2    history, that's just based upon what the probation officer is

3    giving me as an estimate.  I can't say for certain whether it

4    is or isn't.  I won't know that for certain until a

5    presentence report is prepared.

6       Understand?

7          DEFENDANT BALSER:  Yes, sir.

8          THE COURT:  Fair enough.  Now let's turn,

9    Ms. Leonhard, to Mr. Brock's plea agreement.  You can

10   summarize that.

11      I want you to pay close attention as well, Mr. Brock.

12         MS. LEONHARD:  Your Honor, pursuant to the written

13   plea agreement, the defendant is pleading guilty to Count 1,

14   which the Court has already reviewed with him.  It charges him

15   with production of child pornography.  He will agree to the

16   forfeiture allegation.  In exchange, the United States will

17   move to dismiss the possession count, Count 2, at sentencing.

18         THE COURT:  Before I forget, the forfeiture

19   allegation in Mr. Balser's --

20         MR. McBRIDE:  There's no agreement on that.  There's

21   an issue, depending on what happens with the state.  I just

22   left it out to see if we got through this plea agreement.

23      Chances are what will end up happening is the state will

24   file for a destruction order because it's in state custody

25   right now.

33

1          THE COURT:  Mr. Howe?

2          MR. HOWE:  That's accurate.

3          THE COURT:  There's no agreement in your plea

4     agreement regarding --

5          MR. HOWE:  There isn't, Judge.  And quite frankly, it

6     wasn't of consequence to my client that it's so great.  We

7     figured it was going to be handled through a destruction

8     order.

9          THE COURT:  That's fine.  I didn't mean to interrupt.

10         MS. LEONHARD:  Paragraph 2 of the plea agreement

11    simply memorializes the essential elements of the crime

12    charged.

13         Paragraph 3 sets forth the factual basis of the plea.  By

14    signing this plea agreement, the defendant admits the United

15    States could prove those facts contained in paragraph 3 beyond

16    a reasonable doubt and that those facts would establish the

17    three essential elements of the crime charged.

18         Paragraph 4 sets forth the statutory penalties, both

19    minimum and maximum, that apply in this case, and those have

20    already been reviewed by the Court with the defendant.

21         Paragraph 5 contains the recommended sentencing guideline

22    calculations that the parties are proposing.  Both parties

23    agree and acknowledge that these are recommendations only and

24    do not bind the Court.

25         There's no agreement regarding this defendant's criminal

34

1    history.

2         In paragraph 7, he waives his right to appeal his guilty

3    plea, conviction, and sentence.  And except for claims of

4    ineffective assistance of counsel, he waives the right to

5    collaterally attack the same.

6         In paragraph 8, the defendant agrees to forfeit to the

7    United States any and all interest he has in the property

8    listed in the forfeiture allegation and will execute any

9    documents necessary for that forfeiture.

10        Your Honor, those are essentially the substantive

11   portions of the plea agreement.

12             THE COURT:  Let me just do a little bit of math here.

13        First of all, Mr. Brock, did you hear the summary

14   provided by the prosecutor?

15             DEFENDANT BROCK:  Yes, Your Honor.

16             THE COURT:  Is that your understanding of the written

17   plea agreement you have with the United States?

18             DEFENDANT BROCK:  Yes, sir.

19             THE COURT:  Mr. Alerding?

20             MR. ALERDING:  That's it.

21             THE COURT:  According to the written plea agreement,

22   at paragraph 5, these recommendations are non-binding; is that

23   right?

24             MS. LEONHARD:  It is.

25             THE COURT:  Is that correct?

35

1          MR. ALERDING:  Correct.

2          THE COURT:  Now, we have a number of enhancements

3     which are recommended.  We have a base offense level of 32, a

4     four-level increase because the minor had not attained the age

5     of 12, a two-level increase because the offense involved

6     commission of a sex act or sexual contact, a four-level

7     increase because the offense involved material that portrays a

8     toddler, a two-level increase because of the familial

9     relationship between the defendant and the minor; that is, he

10    was the uncle, and then three levels off for acceptance, for a

11    total offense level of 41.

12        Just like the recommendation regarding Mr. Balser, the

13    probation officer is believing that you're going to be a

14    Category I criminal history, which is, again, not binding.  If

15    you are a Category I criminal history and the Court were to

16    follow the recommendations in paragraph 5 regarding the

17    guideline calculations, the estimated advisory guideline range

18    for you would be a sentence of 324 to 360 months.

19        Do you understand that?

20          DEFENDANT BROCK:  Yes, sir.

21          THE COURT:  Mr. Alerding, is that kind of where you

22    think he's likely going to fall?

23          MR. ALERDING:  That's correct.

24          THE COURT:  Okay.  Just wanted to make sure.  Both of

25    you are looking at substantial time, and I don't want either

1      of you to come back later and say, You know what?  On

2      December 12, 2017, the Court didn't tell me what I was looking

3      at.  That's why we're spending a little bit more time.  Not

4      that if you were looking at one year I wouldn't spend time,

5      but we're looking at substantial penalties here for both of

6      you.

7          Okay.  We've spent quite a bit of time talking about the

8      sentencing guidelines and how they may apply in each of your

9      cases.

10         There's a number of other sentencing factors the Court

11     will look at in determining the appropriate sentence.  Those

12     include things such as the nature and circumstances and

13     seriousness of the offense, your history and characteristics,

14     as well as a sentence that would promote respect for the law,

15     provide just punishment, afford adequate deterrence to others

16     and protect the public.

17         Do you each understand the Court's going to be looking at

18     all of those factors in sentencing you?

19              DEFENDANT BALSER:  Yes, sir.

20              DEFENDANT BROCK:  Yes, Your Honor.

21              THE COURT:  Now, one thing about Mr. Brock's plea

22     agreement that I want to make sure that we all understand is

23     paragraph 5I.  It says restitution is applicable and will need

24     to be decided at sentencing.

25         Ms. Leonhard, have you spoken with the victim's family as

1   far as that restitution request?

2        MS. LEONHARD:  This case, I think, much like

3   Mr. Balser's case, originated in state court and was

4   investigated initially by the Covington Police Department.

5   One of the detectives with the Covington Police Department has

6   been in contact with the minor victim's mother, who is also

7   related to the defendant.  So if there's not an agreement

8   reached between the parties prior to sentencing, I expect that

9   we'll probably present proof on that issue at sentencing.

10        THE COURT:  That is something, under the statute --

11   and it's fairly broadly interpreted.  I actually wrote a

12   fairly lengthy order, John Estep.  That was like 2004 *[sic]*

13   era.  It was a production of child pornography case where

14   there was a number of items that restitution was sought for by

15   the victim and her family.  It was actually three minor

16   victims, plus a mother.

17        And I think it was 2014 time, Estep, E-s-t-e-p, if you're

18   interested in the type of things that are available.  The

19   statute, the Mandatory Victim Restitution Act sets forth a

20   number of things which are recoverable.  I mention that to

21   you, Mr. Brock, because it's mentioned in your plea agreement.

22        It could potentially be in play for you as well,

23   Mr. Balser.

24        In the absence of it being an agreed amount, which

25   Ms. Leonhard mentioned, I think it's always helpful to get

1    that information to the probation officer in advance of the

2    preparation of the presentence report because while the

3    statute allows me to do it post-sentencing, have a restitution

4    hearing after sentencing, my preferred practice is just to

5    address it at the sentencing so we can get a defendant

6    designated and get them to the institution, and we don't have

7    to keep them in a local jail.

8        So to the extent that either of you have information

9    regarding that, if you could get it to the probation officer,

10   that would be certainly helpful.

11              MS. LEONHARD:  Very well.

12              THE COURT:  Thank you.  Both of you understand that

13   restitution is potentially in play for each of you?

14              DEFENDANT BALSER:  Yes, sir.

15              DEFENDANT BROCK:  Yes, sir.

16              THE COURT:  All right.  Let me briefly discuss with

17   each of you what happens next in this process.  I know each of

18   you are facing a sentence of imprisonment in state court.

19              MR. ALERDING:  Mr. Brock's case was dismissed.

20              THE COURT:  Your case was dismissed; is that right?

21              MS. LEONHARD:  It was dismissed in lieu of federal

22   prosecution.

23              THE COURT:  I apologize.  I know Mr. Balser is --

24   Mr. McBride, is he going to remain in federal custody until

25   the federal charges are resolved and then go back to state

39

1     custody?

2          MR. McBRIDE:  Yes, Your Honor.

3          THE COURT:  Okay.  So what will happen, once we

4     finish your federal sentencing, Mr. Balser, instead of being

5     designated to the institution, even though you will be

6     designated, you'll go back to Campbell County and take care of

7     those charges, and then I don't know if you'll serve your

8     sentence federally or state.  That's not anything I control.

9        Do you understand that?

10         DEFENDANT BALSER:  Yes, sir.

11         THE COURT:  Mr. Howe, have you spoken with the

12    prosecutor in state court about that?

13         MR. HOWE:  My understanding, the desire is to serve

14    from a federal standpoint.

15         THE COURT:  I understand that.

16         MR. HOWE:  I can't control that.  In fact, they've

17    actually been taking him back and forth to court, although

18    he's here on a writ, because he's over in Campbell County, can

19    make an appearance.  I don't know what's been going on.

20         THE COURT:  As long as someone remains in their

21    custody -- I know I had a couple of Ashland cases where

22    someone had charges in Boyd County, and the federal marshal

23    actually accompanied the individual to Boyd County, they made

24    an appearance, and they went back.

25         MR. HOWE:  He does have a date in Campbell County in

40

1     January.  I know that.  It's a January date.  They've been

2     monitoring.

3              THE COURT:  We're certainly not going to have a

4     sentencing prior to that date.

5              MR. HOWE:  No.

6              THE COURT:  Okay.  Well, let me now turn to something

7     that applies to both of you now.  The presentence report.  If

8     I accept your plea, I'll set a sentencing likely sometime in

9     March or April here.

10         The probation officer will be interviewing each of you

11    and preparing what's called a presentence investigation

12    report.  It's a detailed report about you, your background,

13    work history, education history, family history, medical

14    issues.

15         The facts of the case, any victim impact statements are

16    usually attached to that.  Family members who want to provide

17    information to the Court, they can do that.  Victims have a

18    statutory right to address the Court either themselves or

19    through a representative if they'd like to do that.

20         About five weeks before sentencing, the report is

21    disclosed to the lawyers.  You'll get a copy through your

22    lawyer.  Anything in that report you disagree with, they'll

23    likely, at least as relates to you, Mr. Balser, the probation

24    officer will be making a recommendation regarding that

25    four-level enhancement that there's an agreement to disagree.

41

1      They may agree with you that it doesn't apply.  The

2  prosecutor can object.  They may agree with the prosecutor

3  that it does apply and you can object.

4      One way or the other, if there are any objections by

5  either of you that can't be resolved prior to sentencing, I'll

6  hear the objection, make a ruling one way or the other, and

7  sentence you after that.

8      Do you each understand that?

9          DEFENDANT BALSER:  Yes, sir.

10          DEFENDANT BROCK:  Yes, sir.

11          THE COURT:  Okay.  The Court orders that the Brock

12  plea agreement be filed of record.  I do want to wait until

13  the end before I accept Mr. Balser's plea agreement, because

14  it does have a conditional 11(c)(1)(C) element to it.

15      There's no parole in federal court so if you are

16  sentenced to imprisonment, you're not going to be released

17  early on parole.

18      Do you understand that?

19          DEFENDANT BROCK:  Yes, sir.

20          DEFENDANT BALSER:  Yes, sir.

21          THE COURT:  If the sentence is higher than you

22  anticipate, while you certainly can object to it, you'll not

23  be permitted to withdraw your guilty plea.

24      Do you understand?

25          DEFENDANT BALSER:  Yes, sir.

1          DEFENDANT BROCK:  Yes, sir.

2          THE COURT:  Once I accept your plea, if I do accept

3    it, you can't come back later and change your mind in the

4    absence of some sort of extraordinary reason.

5       Do you understand that?

6          DEFENDANT BALSER:  Yes, sir.

7          DEFENDANT BROCK:  Yes, sir.

8          THE COURT:  Now, within your plea agreements, there's

9    also a waiver provision, and I'll start with you, Mr. Brock,

10   because yours is straightforward.

11      Paragraph 7 of your plea agreement reflects that you

12   agree to waive the right to appeal the guilty plea,

13   conviction, and sentence.

14      Do you understand that?

15         DEFENDANT BROCK:  Yes, sir.

16         THE COURT:  You've spoken with Mr. Alerding about

17   that?

18         DEFENDANT BROCK:  Yes, sir.

19         THE COURT:  Straightforward, no appeal.

20      Understand?

21         DEFENDANT BROCK:  Yes, sir.

22         THE COURT:  Okay.  Now, the last sentence states that

23   except for claims of ineffective assistance of counsel, you're

24   also waiving the right to attack collaterally the guilty plea,

25   conviction, and sentence.

1    Have you spoken with Mr. Alerding about that?

2         DEFENDANT BROCK:  Yes, sir.

3         THE COURT:  Now, that is a separate right that you

4    may have under some very limited circumstances to challenge

5    your conviction and sentence based upon some alleged

6    constitutional violation.  Other than your attorney was

7    constitutionally ineffective, a fairly high standard to meet,

8    other than that sole claim, you're not going to be able to

9    come back and challenge your conviction and sentence based

10   upon some constitutional violation.

11        Do you understand?

12        DEFENDANT BROCK:  Yes, sir.

13        THE COURT:  I have defendants who get sentenced, they

14   don't appeal because there's a waiver of the appeal, but six

15   months, nine months, 18 months, five years later, they file a

16   2255 alleging that their conviction was wrongfully obtained

17   for a variety of reasons.

18        That waiver in paragraph 7, the appellate court over in

19   Cincinnati has said that those waivers mean what they say.

20   You can't come back later and challenge your conviction and

21   sentence, other than this sole claim.

22        Do you understand?

23        DEFENDANT BROCK:  Yes, sir.

24        THE COURT:  All right.  After advising you of the

25   rights you're giving up in paragraph 7, is it still your

44

1    intention to give up those rights, sir?

2              DEFENDANT BROCK:  Yes, sir.

3              THE COURT:  The Court finds that the waivers in

4    paragraph 7 are knowing and voluntary, and Mr. Brock

5    understands the consequences of both waivers.

6         Now, Mr. Balser, your waiver is limited, to a certain

7    extent.  You're not able to appeal your guilt because you're

8    pleading guilty.

9         Do you understand that?

10             DEFENDANT BALSER:  Yes, sir.

11             THE COURT:  Within paragraph 7, you're reserving the

12   right to appeal the sentence of imprisonment, only if the

13   Court finds that the 2G2.1(b)(4)(A) four-level enhancement

14   applies.

15             DEFENDANT BALSER:  Yes, sir.

16             THE COURT:  If I agree with you that it doesn't

17   apply, there will be no appeal of the sentence.

18        Do you understand?

19             DEFENDANT BALSER:  Right.

20             THE COURT:  Is that your understanding, Mr. Howe?

21             MR. HOWE:  It is, Judge.

22             THE COURT:  Yours as well, Mr. McBride?

23             MR. McBRIDE:  Yes, Your Honor.

24             THE COURT:  Now, that last sentence of paragraph 7 is

25   the same for you as it was for Mr. Brock.  Except for claims

1    of ineffective assistance of counsel, you're also waiving the

2    right to attack collaterally the guilty plea, conviction, and

3    sentence.

4        Have you spoken with Mr. Howe about that?

5            DEFENDANT BALSER:  Yes, sir.

6            THE COURT:  When I was explaining to Mr. Brock what

7    that meant, did you understand that?

8            DEFENDANT BALSER:  Yes, sir.

9            THE COURT:  So other than claims that Mr. Howe did a

10   constitutionally ineffective job in representing you, you're

11   not going to be able to challenge your conviction and sentence

12   later by filing a post-conviction motion.

13       Do you understand?

14           DEFENDANT BALSER:  Yes, Your Honor.

15           THE COURT:  Having advised you of the rights you're

16   giving up in paragraph 7, is it still your intention to give

17   up those rights?

18           DEFENDANT BALSER:  Yes, sir.

19           THE COURT:  The Court finds, after speaking with

20   Mr. Balser, the waivers in paragraph 7 are knowing and

21   voluntary and that he understands the consequences of both of

22   those waivers.

23       All right.  Now, I thought what we would do now is just

24   have each defendant come up to the Court individually, and I

25   will go through their plea agreements with them from a factual

46

1      standpoint.  We'll start with Mr. Balser.

2           (Sidebar conference.)

3           THE COURT:  We're at the bench with the defendant and

4      Mr. Howe, as well as the prosecutor.  Paragraph 3 of your

5      written plea agreement indicates that as to Count 1, the

6      United States could prove the following facts that establish

7      the elements of the offense beyond a reasonable doubt, and you

8      admit these facts, and then there are three subparagraphs,

9      paragraph 3A, 3B, and 3C.

10          Have you reviewed those facts with your lawyer?

11          DEFENDANT BALSER:  Yes, Your Honor.

12          THE COURT:  All right.  So you are the victim's

13     father in this case?

14          DEFENDANT BALSER:  Yes, Your Honor.

15          THE COURT:  And at the time that you allegedly

16     committed this offense, you lived together in Campbell County?

17          DEFENDANT BALSER:  Yes, sir.

18          THE COURT:  And did you, on or about January 8, 2017,

19     take videos of the victim at your home with your smartphone?

20          DEFENDANT BALSER:  Yes, Your Honor.

21          THE COURT:  And did those videos include the victim

22     performing oral sex on you?

23          DEFENDANT BALSER:  Yes, Your Honor.

24          THE COURT:  Was the victim under the age of 16 when

25     you created the images?

1            DEFENDANT BALSER:  Yes, Your Honor.

2            THE COURT:  Was, in fact, the victim under the age of

3    12?

4            DEFENDANT BALSER:  Yes, Your Honor.

5            THE COURT:  And the device that you used to film or

6    take the video, that was manufactured somewhere other than the

7    United States.

8         Do you understand that?

9            DEFENDANT BALSER:  Yes, Your Honor.

10           THE COURT:  Mr. McBride?

11           MR. McBRIDE:  Sufficient factual basis, Your Honor.

12           THE COURT:  Mr. Howe?

13           MR. HOWE:  Yes, sir.

14           THE COURT:  How do you plead to the charge, the

15   production count?  I think the date is -- let me make sure

16   here.  Count 1 alleges conduct on January 8 of this year.  Did

17   you commit that offense on or about that date?

18           DEFENDANT BALSER:  Yes, Your Honor.

19           THE COURT:  All right.  And you plead guilty?

20           DEFENDANT BALSER:  Yes, Your Honor.

21           THE COURT:  Very well.  Thank you.  You can have a

22   seat.

23        (Sidebar concluded.)

24           THE COURT:  Mr. Brock and counsel.

25        (Sidebar conference.)

48

1          THE COURT:  Let the record reflect we are at the

2    bench now with Mr. Brock, his lawyer, and the prosecutor.

3          Within your plea agreement, Mr. Brock, at paragraph 3, it

4    states that as to Count 1, the United States could prove

5    beyond a reasonable doubt the following facts which establish

6    the essential elements of the offense and that you admit these

7    facts.  And then there are five subparagraphs, paragraphs 3A,

8    3B, 3C, 3D, and 3E.

9          Have you reviewed those facts with your lawyer?

10          DEFENDANT BROCK:  Yes.

11          THE COURT:  Okay.  I notice you have a scar on

12    your --

13          DEFENDANT BROCK:  Yes, sir.

14          THE COURT:  What is that from?

15          DEFENDANT BROCK:  A head injury when I was a kid.

16          THE COURT:  All right.  Now, the alleged conduct in

17    Count 1, the date alleged is between November 14, 2013 and

18    continuing through July 27, 2016.

19          Did you, during those dates, coerce, entice, induce a

20    minor to engage in sexually explicit conduct for the purpose

21    of producing a visual depiction of that conduct?

22          DEFENDANT BROCK:  Can I say something to you?

23          MR. ALERDING:  One of the words is also "use."

24          THE COURT:  Use.  Did you use a minor?

25          MR. ALERDING:  This is a small child who couldn't be

49

1    enticed.  He just did it.

2           THE COURT:  Okay.  So did you use a small child for

3    the purpose of producing a visual depiction of that?

4           DEFENDANT BROCK:  Yes.

5           THE COURT:  You did?  Okay.

6        (Mr. Alerding and the defendant conferring.)

7           MR. ALERDING:  He has no recollection of it

8    continuing that long.  We saw videos of a very young child,

9    but it's hard to estimate the age of the child up to the age

10   of, like, 5.

11          THE COURT:  But was it a child under the age of 5?

12          MR. ALERDING:  Oh, yes.

13          THE COURT:  Is that correct?

14          DEFENDANT BROCK:  Basically, they moved in in like

15   November of 2013 and they left in December and came back like

16   in February of 2014, and then they were there a couple months.

17   And then they left from '14 till, like, sometime in '16.

18          MR. ALERDING:  The most damaging videos appear to be

19   of a very young child.

20        Is that correct, Elaine?

21          MS. LEONHARD:  It is.

22          THE COURT:  Okay.  So did you perform oral sex on a

23   very young child?

24          DEFENDANT BROCK:  Yes, sir, I did.

25          THE COURT:  And did the young child perform oral sex

1    on you?

2              DEFENDANT BROCK:  No, sir.

3              THE COURT:  Okay.  It says here, paragraph 3B --

4              MR. ALERDING:  That may be a statement the child gave

5    at CAC.  He doesn't recollect oral sex being performed on him,

6    and I don't think I have a video of that.

7              MS. LEONHARD:  Your Honor, that's correct.  Paragraph

8    3B memorializes the minor's statements during the interview at

9    the CAC.  Later on, in paragraph 3E, the defendant admits

10   basically that he performed oral sex on his nephew and then

11   produced images reflecting the same.

12             THE COURT:  And you, in fact, did that?

13             DEFENDANT BROCK:  Yes, sir.

14             THE COURT:  You performed oral sex on your nephew,

15   who was under the age of 5, and made videos of that?

16             DEFENDANT BROCK:  Yes, sir.  At the time he was

17   like -- he was 3.

18             THE COURT:  3, okay.

19             DEFENDANT BROCK:  Like 3 or 4.  They left in '14 and

20   then -- yes, sir.

21             THE COURT:  Okay.  And you are his uncle, correct?

22             DEFENDANT BROCK:  Yes, sir.

23             THE COURT:  All right.  And that occurred between

24   those dates I mentioned earlier?

25             DEFENDANT BROCK:  One time it happened in 2014.  Like

1    I said, he moved in in like 2013 and was there for a little

2    bit with his mom, and then they moved out.  And then they came

3    back in '14 for a little bit, and they moved out permanently,

4    and he was not back in until, like, sometime in like the

5    middle of May of 2016.

6              THE COURT:  Where did this occur?

7              DEFENDANT BROCK:  It happened once at my house, but I

8    don't know if this -- I mean --

9              THE COURT:  It happened at your house in Covington?

10             DEFENDANT BROCK:  Yes, sir.

11             THE COURT:  Counsel, the images themselves --

12             DEFENDANT BROCK:  I don't know if those images --

13             THE COURT:  Hold on, hold on.  Did you use some sort

14   of phone, or what device did you use?  An iPad?

15             DEFENDANT BROCK:  Yes, it was a device.

16             THE COURT:  Yes, I see here --

17             MS. LEONHARD:  That's correct.  The images had data

18   that revealed they were taken with an iPad.  That iPad was

19   never recovered.  The empty box was.  But then they were saved

20   on his Toshiba laptop that was recovered.

21             THE COURT:  So the images themselves were actually

22   found on his Toshiba laptop that was recovered?

23             MS. LEONHARD:  That's correct.

24             THE COURT:  And you understand that?

25             DEFENDANT BROCK:  Yes, sir.

52

1          THE COURT:  Okay.  Sufficient factual basis?

2          MR. ALERDING:  I believe so, Judge.  What they've

3      seen and what he remembers, what he admitted and what the

4      child said at CAC, there's plenty of factual basis.

5          THE COURT:  Okay.  Well, what the child said, he

6      doesn't necessarily have to agree with.

7          MS. LEONHARD:  Correct.

8          THE COURT:  The rest of it is certainly sufficient.

9          MR. ALERDING:  Yes, sir.

10          THE COURT:  Do you agree?

11          MS. LEONHARD:  I do.  And both of the devices, the

12      iPad and the Toshiba, were manufactured outside of the United

13      States.

14          THE COURT:  Do you understand that?

15          DEFENDANT BROCK:  Yes, sir.

16          MR. ALERDING:  I explained that to him.

17          THE COURT:  Very well.  How do you plead to the

18      charge in Count 1, guilty or not guilty?

19          DEFENDANT BROCK:  Guilty, sir.

20          THE COURT:  You can have a seat.  Thank you.

21        (Sidebar concluded.)

22          THE COURT:  After listening to the defendants'

23      recitations of what occurred in their respective cases, the

24      Court is prepared to make some legal findings now.

25        I find as relates to both defendants that each is fully

53

competent and capable of entering an informed plea, that both
are aware of the nature of the charge in Count 1 of their
respective indictments, and that the plea of guilty is a
knowing and voluntary one, supported by an independent basis
in fact, satisfying the elements of the offense.  Their pleas
are, therefore, accepted, and they are adjudged guilty of that
offense.

I will accept and order that the written plea agreement
for Mr. Balser be accepted.  You can reflect that in the
minutes, Madam Clerk.

Mr. Brock's plea agreement will just be filed, because
there was no (c)(1)(C) element to that.

I will also vacate the trial date as it relates to
Mr. Balser, which is set for next Tuesday.  That date is
vacated.

I will also order that a presentence report be prepared
for each of you.  You need to cooperate fully with the
presentence report writer, whoever prepares that.  The
allegations are here incredibly serious.  I recognize that.
Each of you are looking at substantial penalties.  Don't make
it worse by not cooperating with Probation.  While there may
be a cap of 360 by statute, if you don't cooperate with
Probation, the chances of the Court getting closer to that cap
are probably enhanced.

I certainly would encourage both of you to have your

54

1    lawyers with you when you are interviewed, because they've

2    been through this process many times and you have not, so they

3    can help you during the process.

4        So as far as sentencing goes, because there may be a

5    restitution element, at least as it relates to Mr. Brock and

6    perhaps Mr. Balser, I was probably going to lean towards

7    closer to something that's 120 versus 90 days.

8        We're looking at a date in probably mid-April.  Tuesday,

9    the 17th, would you all be available then?

10            MR. McBRIDE:  Yes, Your Honor.  My day is open.

11            MR. HOWE:  I have nothing scheduled in April that I'm

12   aware of, Judge, at this point in time.

13            THE COURT:  Mr. Alerding?

14            MR. ALERDING:  That's fine with me.

15            THE COURT:  We'll set sentencing, Mr. Brock will be

16   at 9:00 a.m. on April 17, and Mr. Balser will be at 10 a.m.

17   That's, of course, subject to intervening orders of the Court.

18       Have you each understood everything we've done today?

19            DEFENDANT BALSER:  Yes, Your Honor.

20            DEFENDANT BROCK:  Yes, sir.

21            THE COURT:  Did you each understand my questions?

22            DEFENDANT BALSER:  Yes, Your Honor.

23            DEFENDANT BROCK:  Yes, sir.

24            THE COURT:  Do any of your answers need to be

25   changed?

55

1          DEFENDANT BALSER:  No, Your Honor.

2          DEFENDANT BROCK:  No, sir.

3          THE COURT:  Counsel, anything else?

4          MR. HOWE:  Not on behalf of Mr. Balser.

5          MR. ALERDING:  Nothing further.

6          THE COURT:  Counsel?

7          MR. McBRIDE:  Nothing from the United States.

8          MS. LEONHARD:  Likewise.  Thank you.

9          THE COURT:  Very well.  Each defendant will be

10    remanded to custody of the marshal pending sentencing.

11         (Proceedings concluded at 11:36 a.m.)

12                          - - -

13

14                    C E R T I F I C A T E

15         I, LISA REED WIESMAN RDR-CRR, certify that the
      foregoing is a correct transcript from the record of
16    proceedings in the above-entitled case.

17

18    _\s\ Lisa Reed Wiesman_            ____May 21, 2018____
      LISA REED WIESMAN, RDR-CRR          Date of Certification
19    Official Court Reporter

20

21

22

23

24

25